UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY FRANCES WAGLEY, JAMES WAGLEY, ANNE WAGLEY, and MARY COPP, as beneficiaries of the MARY PENNEY WAGLEY IRREVOCABLE TRUST,<br><br>                    Plaintiffs,<br><br>                    - against -<br><br>JP MORGAN CHASE BANK, N.A. as trustee of the MARY PENNEY WAGLEY IRREVOCABLE TRUST, J.P. MORGAN SECURITIES LLC, J.P. MORGAN INVESTMENT MANAGEMENT INC., JPMORGAN DISTRIBUTION SERVICES, INC., and JPMORGAN CHASE & CO.,<br><br>                    Defendant. | **MEMORANDUM<br>OPINION & ORDER**<br><br>18 Civ. 8668 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

            In this action, Plaintiffs Mary Frances Wagley, James Wagley, Anne Wagley, and

Mary Copp claim that Defendants JPMorgan Chase Bank, N.A. ("Chase"), JPMorgan Securities

LLC, JPMorgan Investment Management, JPMorgan Distribution Services, Inc., and JPMorgan

Chase & Co. ("JPMC," and together with its affiliates, "JPMorgan") mismanaged a trust of

which they are the beneficiaries.  The Amended Complaint alleges breach of fiduciary duty,

aiding and abetting breach of fiduciary duty, and unjust enrichment.  Defendants have moved to

dismiss the Amended Complaint.  (Dkt. No. 51)

            For the reasons stated below, Defendants' motion to dismiss will be granted in

part and denied in part.

**BACKGROUND**

I.     **FACTS**[1]

        Plaintiffs are beneficiaries of the Mary Penney Wagley Irrevocable Trust (the "Trust"), which was established in 1934.  (Am. Cmplt. (Dkt. No. 21) ¶¶ 1, 18)  Defendant Chase administers the Trust as its trustee.  (Id. ¶ 2)

        The Amended Complaint alleges that, in an effort "to make up for lost earnings following the 2008-2009 financial crisis," Chase and its parent company, JPMC,

> directed its sprawling asset management business to systematically steer the assets of captive clients such as Plaintiffs into unsuitable, self-dealing transactions that enriched JPMorgan to the detriment of [the Trust] and JPMorgan's fiduciary obligations. . . . Under [Chase's] failed stewardship, the growth of the [] Trust has consistently lagged far behind the returns achieved by comparable Penney family endowments and widely recognized market benchmarks. . . . As of the present date, the [] Trust's underperformance has accumulated into a shortfall of millions of dollars of principal value.

(Id. ¶¶ 4-5)

        Plaintiffs claim that Defendants' alleged "practices were improper because of the obvious conflict of interest [they] created for JPMorgan's investment advisors and managers." (Id. ¶ 28)  "More brazen than its competitors, [however,] JPMorgan persisted in [these] practice[s], often without making any disclosure of its self-dealing to clients and fiduciaries – until its misconduct attracted regulatory attention from the Securities and Exchange Commission [("SEC")]."  (Id. ¶ 29)  The SEC investigation resulted in Chase and J.P. Morgan Securities paying a $307 million settlement, which was announced on December 18, 2015.  (Id. ¶ 31)  In the December 18, 2015 SEC consent decree, Chase "admitted to a company-wide 'negligent failure . . . to disclose conflicts of interests arising from [its] preferences for (i) JPMorgan-

---

[1]  The following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

managed mutual funds . . . (ii) JPMorgan-managed hedge funds . . . and (iii) third-party-managed hedge funds that shared client fees with a [JPMorgan] affiliate."  (Id. (quoting Dec. 18, 2015 SEC consent decree) (alterations in Am. Cmplt.))

Plaintiffs also allege that "[r]egulators found 'significant harm to clients' as a result of the misconduct admitted to by [Chase] and [JPMorgan Securities] in the SEC Order – a finding borne out by the injury suffered by the [] Trust. . . ."  (Id. ¶ 34 (quoting Nathaniel Popper, JPMorgan to Pay $307 Million for Steering Clients to Own Funds, N.Y. Times (Dec. 18, 2015))) Chase's "responsibilities as Trustee of the [] Trust included fiduciary duties to preserve trust property and to invest with reasonable care and competence . . . [,] [including] a duty to comply with the prudent investor rule, which required . . . [Chase to] exercis[e] reasonable care, skill, and caution and [to] pursu[e] an investment strategy in accordance with risk and return objectives reasonably suited to the portfolio, and to incur costs only to the extent they were appropriate and reasonable."  (Id. ¶ 40)

In February 2009, Plaintiff Mary Frances Wagley requested that the Trust administration be transferred to JPMorgan's Dallas office so that her son, Plaintiff James Wagley, could manage the trustee relationship.  (Id. ¶ 41)  James "instructed [Chase] to prudently invest to achieve long-term principal growth, and to de-prioritize yearly income . . . [and] that it should eliminate high-fee investment products in favor of low-cost, passive index funds, as he reiterated in an e-mail to JPMCB on January 16, 2015. . . ."  (Id.)

As to prudent investment, Plaintiffs allege that while Chase "repeatedly assured and represented to [Plaintiffs] that it had and would continue to follow the family's investment strategy and stated objectives . . . , the performance of the [] Trust does not bear out JPMorgan's assurances, and it departs so drastically from the performance of market benchmarks as to

confirm [Chase]'s violation of the most basic standards of prudent investing."  (Id. ¶ 42)

Plaintiffs allege that the "Trust has lost principal value during a time when the stock market has

flourished and [two comparable trusts] have grown by millions of dollars."  (Id. ¶ 43 (emphasis

in original))  Plaintiffs attribute this underperformance to two factors:  (1) Chase's "deliberate

placement of trust assets into costly investment products from which the fee income would

improperly inure to [Chase]'s benefit; (2) Chase "managers squander[ing] [] Trust assets on

highly speculative, unsuitable investments that no reasonably prudent investor would have

believed to be consistent with the bank's duty to preserve trust property"; and (3) Chase's

"continuous overhauling of the team in charge of the [] Trust[,] [which] resulted in abrupt

changes of investment strategy and loss of institutional knowledge that weakened and proved

costly to the Trust."  (Id. ¶¶ 44-45)

   Plaintiffs also allege that Chase owed them a duty of loyalty, and that it breached

that duty by engaging in "self-interested transactions."  (Id. ¶ 46)  These "self-interested

transactions" include:  (1) 2008 and 2010 investments in "two struggling Highbridge funds . . .

[,] both of which were closed down after [Chase] sold the [] Trust's positions at a significant

loss" (id. ¶¶ 47-49); (2) investments in "numerous proprietary funds that are directly managed by

or receive other services from [Chase] affiliates, including [JPMorgan Investment Management]

(as investment adviser) and [JPMorgan Distribution Services] (as distributor)," shares of which

were held by the Trust "[a]t various times during 2013" (id. ¶ 51); (3) shares in third-party funds

– held "[a]t the end of 2013" – which were managed "almost exclusively [by] third-party fund

managers that have admitted to the practice of paying retrocessions to intermediaries such as

JPMorgan," such that Chase "declined to pursue specific investment opportunities on behalf of

their clients because third parties refused to pay kickbacks to the bank" (id. ¶¶ 54-55);

(4) "executing large numbers of trades in order to generate additional fees and commissions . . . in volumes far exceeding trades" in comparable trusts.  (Id. ¶ 57)

The Amended Complaint also alleges that Chase "owed Plaintiffs an affirmative duty to make a full and accurate disclosure of all facts material to their fiduciary relationship . . . [,] and to provide a full accounting upon demand."  (Id. ¶ 58)  However, "the 2013 annual account statement for the []Trust makes no mention of any preference for proprietary investments . . . [,] [and] [w]hile the 2014 and 2015 annual account statements belatedly and vaguely refer to a 'general' preference for 'J.P. Morgan managed strategies,' even these admissions did not disclose the extent of [Chase]'s self-dealing."  (Id. ¶¶ 60-61 (emphasis in original))  As to third-party funds, the 2013 annual account statement "makes no mention of retrocessions at all"; the 2014 statement states that "conflicts may result"; and the 2015 statement states that "conflict will result," without identifying conflicted transactions.  (Id. ¶ 63 (emphasis in original))

Chase "also mischaracterized its investment process," as the 2014 annual account statement states that investment strategies "are subject to a rigorous and ongoing review process," while the 2015 statement merely reports that investment strategies are "subject to a review process."  In reality, "JPMorgan did not apply a rigorous or consistent review process to ensure that its self-interested transactions were truly in the best interests of its client."  (Id. ¶ 64 (emphasis in Am. Cmplt.))

Plaintiffs inquired about the Trust's poor performance on several occasions.  In a January 16, 2015 email to Chase employee Kelly Adams, Plaintiff James Wagley requested "information on the performance of and fees paid by the Trust."  Adams provided information

only as to fees, and "Adams failed to disclose the $188,245.72 in additional fees that JPMCB improperly charged to the [] Trust."  (Id. ¶ 65)

In the summer of 2015, James requested a meeting with Chase.  At that meeting, Chase "represented that it had done an excellent job as Trustee of the [] Trust, and failed to acknowledge the self-dealing that was responsible for the Trust's poor performance."  (Id. ¶ 66)

In 2016, James requested another meeting with Chase, "along with an accounting for any and all payments (including placement fees) that JPMorgan earned from the use, trading and investment of funds from the [] Trust."  (Id. ¶ 67)  At that meeting, Elaine Agather – chairman of JPMC's Dallas region – "apologized for the performance of the Trust, which she admitted was 'disturbing,' [but she] failed to admit any wrongdoing. . . ."  (Id. (emphasis in original)

In a September 1, 2016 letter, Plaintiffs "formally requested that JPMorgan disclose any fees or benefits received by the bank   . . . as well as a full accounting for all self-interested investments" related to the Trust.  (Id. ¶ 68)  On November 1, 2016, Chase and JPMC responded with "a general publication . . . [that contained] a schedule showing the expense ratios of investments . . . and copies of account statements from 2005 to present."  Defendants' letter reported that there were no "self-interested investments," and thus "no fees to identify."  Chase also reported that it "does not collect a commission for trades made on behalf of the Trust."  (Id. ¶ 69)

In a subsequent letter to Chase,[2] Plaintiffs again demanded responses – by January 17, 2017 – to the questions posed in the September 1, 2016 letter.  Chase did not respond to Plaintiffs' letter, but instead filed a petition in Surrogate's Court for Monroe County, New

---

[2]  The Amended Complaint does not allege when this letter was sent.

York, to withdraw as Trustee.  (<u>Id.</u> ¶ 70)  Chase employee Kelly Adams then sent Plaintiff Mary Frances Wagley a letter notifying her that Chase had incorrectly charged fees to the Trust totaling $188,245.72.  Adams stated that this amount would be added to Mary Frances Wagley's next distribution check.  (<u>Id.</u> ¶ 71)  Chase addressed this letter to the 89-year-old Mary Frances Wagley, rather than her son James, even though Chase "knew [James] had become the preferred point of contact for Mary Frances."  (<u>Id.</u>)  The letter "offered only one ambiguous sentence of explanation" for the improper fees.  (<u>Id.</u>)

## II.  AMENDED COMPLAINT

The Amended Complaint pleads breach of fiduciary duty against Chase; aiding and abetting breach of fiduciary duty against JPMC; and unjust enrichment against JPMorgan Investment Management, JPMorgan Distribution Services, and JPMorgan Securities.  (<u>Id.</u> ¶¶ 80-107)

Plaintiffs seek compensatory damages, "[a]n order directing [Chase] to fully account for all gains, profits, and other advantages, including the fees, retrocessions, and other revenues," forfeiture of fees, and disgorgement of all "gains, profits, and other advantages."  (<u>Id.</u> at 49)

## III.  PROCEDURAL HISTORY

### A.  Texas Action

On February 7, 2017, Plaintiffs filed an action against Chase in Texas state court regarding the same conduct at issue here (the "Texas Action").  (Goralnik Decl. (Dkt. No. 18) ¶ 3; Texas Action Cmplt. (Dkt. No. 18-2))  On February 13, 2017, Plaintiffs filed an amended complaint in the Texas Action that added Kelly Adams – a citizen of Texas – as a defendant. (Texas Action Am. Cmplt. (Dkt. No. 18-3) ¶ 16)

On March 13, 2017, Chase and Adams moved to dismiss the Texas Action for lack of jurisdiction, citing a forum selection clause stating that "[Chase] shall not be required to account in any court other than one of the courts of [the state of New York]."  (Texas Action Mtn. to Dismiss (Dkt. No. 18-7) at 3; Trust Agreement (Dkt. No. 18-1) at 8)[3]

On March 16, 2017, Chase removed the Texas Action to the Northern District of Texas, asserting diversity jurisdiction and arguing improper joinder as to Adams.  (Goralnik Decl. (Dkt. No. 18) ¶ 6; Texas Action Notice of Removal (Dkt. No. 18-5))

On August 10, 2017, a judge in the Northern District of Texas granted Plaintiffs' motion to remand, finding that "[P]laintiffs have a possibility of recovery against Adams."  (N.D. Tex. Remand Order (Dkt. No. 18-6) at 5)

On September 14, 2017, the Texas state court denied Chase and Adams's motion to dismiss for lack of jurisdiction.  (Goralnik Decl. (Dkt. No. 18) ¶¶ 9-10)

On October 10, 2017, Chase and Adams filed a petition for a writ of mandamus in the Fifth District Court of Appeals in Dallas, Texas, seeking an order "directing the trial court to vacate its September 14, 2017 order and enter an order granting [Chase and Adams's] [m]otion to [d]ismiss and dismissing the underlying action with prejudice."  (Id. ¶ 10)  On March 14, 2018, the Texas appellate court granted Chase and Adams's petition, holding that "the underlying claims are subject to the forum-selection clause."  (Texas Appellate Court Order (Dkt. No. 18-11) at 8)

On March 15, 2018, the Texas trial court dismissed the action in compliance with the Texas appellate court's order.  (Goralnik Decl. (Dkt. No. 18) ¶ 13)

---

[3]  The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

**B.**     **New York Action**

On September 14, 2018, Plaintiffs filed the instant action in Supreme Court of the State of New York, New York County.[4]  (Notice of Removal (Dkt. No. 1) ¶ 1)  Plaintiffs named only Chase as a defendant.  (Cmplt. (Dkt. No. 1-2))  On September 21, 2018, Chase removed the action to this Court, asserting diversity jurisdiction.  (Notice of Removal (Dkt. No. 1) ¶ 3)

On October 22, 2018, Plaintiffs filed an Amended Complaint and a motion to remand.  (Dkt. Nos. 10, 16, 21)  The Amended Complaint adds Adams, JPMorgan Securities, JPMorgan Investment Management, JPMorgan Distribution Services, and JPMC as defendants. (Am. Cmplt. (Dkt. No. 21))

On September 10, 2019, this Court denied Plaintiffs' motion for joinder as to Adams and for remand, and dismissed Plaintiffs' claims against Adams.  (Sept. 10, 2019 Order (Dkt. No. 44) at 17)

On January 13, 2020, the remaining Defendants moved to dismiss the Amended Complaint.  (Dkt. No. 51)

## DISCUSSION

**I.**     **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

[4]  Plaintiffs filed the instant action within New York's six-month cross-jurisdictional tolling period.  N.Y. C.P.L.R. § 205 (McKinney) ("If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence . . . within six months after the termination. . . .").

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))).

## II.   ANALYSIS

Defendants have moved to dismiss all of Plaintiffs' claims as time-barred.  (Def. Br. (Dkt. No. 52) at 9-19)  As to unjust enrichment, Defendants also contend that Plaintiffs have failed to state a claim.  (Id. at 20-21)

### A.   Breach of Fiduciary Duty Claims

#### 1.   Statute of Limitations and Open Repudiation Doctrine

In moving to dismiss Plaintiffs' claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, Defendants argue that (1) these claims are "governed by the three-year statute of limitations under New York law," because they "primarily seek[] monetary damages"[5] (Def. Br. (Dkt. No. 52) at 12); and (2) New York's "'open repudiation' doctrine,

_____

[5]  The parties agree that New York's statute of limitations law should be applied to Plaintiffs' breach of fiduciary duty claims.  Compare Def. Br. (Dkt. No. 52) at 12 ("New York's three-year statute of limitations bars Plaintiffs' breach of fiduciary claim.  Therefore, with respect to the breach of fiduciary duty claim, the Court need not consider whether it is also barred under the

which in certain circumstances can toll the statute until a trustee resigns or repudiates his duties, 'applies only to claims for equitable relief, and not to claims for monetary damages.'"  (Id. at 15 (quoting Murphy v. Morlitz, No. 15 Civ. 7256 (VSB), 2017 WL 4221472, at *7 (S.D.N.Y. Sept. 21, 2017)))  Defendants go on to argue that "[Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509 (2d Cir. 2001)] does not support applying the open repudiation doctrine to breach of fiduciary duty claims that seek monetary relief and are subject to New York's three-year statute of limitations."  (Id. at 16)

Plaintiffs contend that a six-year statute of limitations applies to their breach of fiduciary duty claims, because they are seeking equitable relief.  Indeed, Plaintiffs contend that Chase's "accounting in connection with its resignation as trustee forms the entire basis of the action."  (Pltf. Opp. Br. (Dkt. No. 55) at 16)  As to the open repudiation doctrine, Plaintiffs argue that Chase's "assertion [regarding Golden Pacific] is simply false.  In fact, the plaintiff in that case sought a $57.5 million judgment as damages for breach of fiduciary duty."  (Id. at 18-19)

In Golden Pacific, the Second Circuit held that "[t]he statute of limitations in New York for claims of unjust enrichment, breach of fiduciary duty, corporate waste, and for an accounting is generally six years. . . . [T]he limitations period for claims arising out of a fiduciary relationship does not commence 'until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated.'"  Golden Pacific, 273 F.3d at 518 (quoting Westchester Religious Inst. v. Kamerman, 262 A.D.2d 131 (1st Dep't 1999)).  However,

---

laws of Plaintiffs' respective home states, which in any event provide the same three-year period (in Maryland, California and Massachusetts) or a four-year period (in Texas).") with Pltf. Opp. Br. (Dkt. No. 55) at 22 ("The applicability of [New York's borrowing statute] is immaterial, as all the jurisdictions where Plaintiffs reside adhere to accrual doctrines analogous to New York's, and such doctrines 'must be imported with the foreign statutory period.'") (quoting In re Smith Barney, Harris Upham & Co. v. Luckie, 85 N.Y.2d 193, 207 (1995)).

"[w]hen the court in <u>Golden Pacific</u> noted that the New York statute of limitations on claims for breach of fiduciary duty is 'generally' six-years, it was speaking of claims for equitable remedies," and accordingly "<u>Golden Pacific</u> is not controlling" with respect to claims for monetary relief.  <u>Fezzani v. Bear, Stearns & Co.</u>, No. 99 CIV. 0793 (RCC), 2004 WL 1781148, at *2-3 (S.D.N.Y. Aug. 10, 2004)

Courts in this District have concluded that the open repudiation doctrine applies only in cases seeking equitable relief.  <u>See</u> <u>Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.</u>, No. 11 CIV. 6345 RJS, 2012 WL 3930112, at *9 (S.D.N.Y. Sept. 10, 2012) ("the open repudiation doctrine is inapplicable to Plaintiffs' claim because the doctrine only applies to the six-year statute of limitations for equitable relief – not the three-year period for monetary damages") (citing <u>In re Kaszirer</u>, 286 A.D.2d 598, 599 (1st Dep't 2001) ("Nor does it avail appellant to argue that the running of this three-year period did not begin until defendant clearly repudiated his fiduciary obligations by rejecting plaintiffs' demand for an accounting, since the requirement of a clear repudiation applies only to claims seeking an accounting or other equitable relief.")); <u>Willensky v. Lederman</u>, No. 13-CV-7026 KMK, 2015 WL 327843, at *10 n.21 (S.D.N.Y. Jan. 23, 2015) ("The open repudiation doctrine applies only to claims for equitable relief, and not to claims for money damages.").

Here, Plaintiffs seek monetary relief.  The accounting requested – "for all gains, profits, and other advantages, including the fees, retrocessions, and other revenues" – is in service of other aspects of the relief sought – "[f]orfeiture of fees" and "[d]isgorgement of all such gains, profits, and other advantages received."  (Am. Cmplt. (Dkt. No. 21) at 49)  "[W]hile Plaintiff[s] assert[] the need for an accounting, the [Amended Complaint] ultimately sounds in law and merely seeks an accounting as a method of determining damages, rather than as a

separate equitable claim." Anderson v. Greene, No. 14 CIV. 10249 (KPF), 2016 WL 4367960, at *22 (S.D.N.Y. Aug. 10, 2016), aff'd, 774 F. App'x 694 (2d Cir. 2019); see also Kaszirer, 286 A.D.2d at 599.  Plaintiffs' argument that this Court should construe this action as "a trustee petitioning to judicially settle its account" has no merit.  (Pltf. Opp. Br. (Dkt. No. 55) at 17) Plaintiffs brought this action, and Chase's application to withdraw as trustee is not before this Court.

Because Plaintiffs seek monetary relief, the applicable statute of limitations is three years, and the open repudiation doctrine does not apply.  See N.Y. C.P.L.R. § 214(4) (McKinney) ("The following actions must be commenced within three years: . . . an action to recover damages for an injury to property"); Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit, 2012 WL 3930112, at *9 ("the open repudiation doctrine is inapplicable to Plaintiffs' claim . . . for monetary damages").

Plaintiffs argue – in the alternative – that "the two-year discovery rule applies to claims for breach of fiduciary duty 'sound[ing] in fraud . . . [,] even where the relief sought is money damages.'"  (Pltf. Opp. Br. (Dkt. No. 55) at 24 (quoting Balta v. Ayco Co., LP, 626 F. Supp. 2d 347, 358 (W.D.N.Y. 2009) (alteration in id.)))  Defendants counter that the Second Circuit has made clear that the fraud statute of limitations 'does not apply if the fraud is only incidental to the breach of fiduciary duty claim. . . .'"  (Def. Br. (Dkt. No. 52) at 10 (quoting Murphy v. Morlitz, 751 F. App'x 28, 30 (2d Cir. 2018)))  Defendants also point out that "the Amended Complaint deleted the fraud cause of action that was contained in the original complaint."  (Def. Reply Br. (Dkt. No. 53) at 12)

"A fraud action is not incidental only when:  (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries

caused by the fraud are distinct from the injuries caused by the alternate claim." Corcoran v. New York Power Auth., 202 F.3d 530, 545 (2d Cir. 1999).

Here, Plaintiffs do not contend that the alleged fraud caused injuries distinct from Chase's breach of fiduciary duty. Instead, Plaintiffs argue that Chase's "fraudulent concealment . . . prevented Plaintiffs from discovering their claims. . . ." (Am. Cmplt. (Dkt. No. 21) ¶ 76) These allegations render the fraud claim incidental, and accordingly the two-year discovery rule does not apply.

The Court further notes that Plaintiffs have cited no authority suggesting that the two-year discovery rule applies absent a distinct cause of action for fraud. Indeed, the cases cited by Plaintiff all involve separate claims for fraud. See Balta, 626 F. Supp. 2d at 358 ("the fiduciary duty claims based on constructive fraud, as well as the essentially-identical claims for constructive fraud, are timely"); Kaufman v. Cohen, 307 A.D.2d 113, 119 (1st Dept. 2003) ("[t]he timeliness of plaintiffs' breach of fiduciary duty claim, therefore, turns on the viability of plaintiffs' fraud cause of action"); Elghanayan v. Victory, 192 A.D.2d 355, 356 (1st Dept. 1993) ("the third cause of action for fraud, which was adequately alleged in the complaint . . . was also timely"); Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A., No. 06 CIV. 5246 JGK, 2007 WL 950134, at *7 (S.D.N.Y. Mar. 28, 2007) (the "fraud limitations period will not apply where the allegation of fraud 'is only incidental to the claim asserted'") (quoting Kaufman, 307 A.D.2d at 119).

The Court concludes that the applicable statute of limitations for Plaintiffs' breach of fiduciary claims is three years.

2.      **Equitable Estoppel**

Plaintiffs argue that they "have pleaded facts which, if proven at trial, would easily satisfy the standards for applying equitable estoppel." (Pltf. Opp. Br. (Dkt. No. 55) at 27) Defendants counter that "the Amended Complaint does not plead the extraordinary circumstances that would be necessary to warrant equitable tolling." (Def. Br. (Dkt. No. 52) at 17)

The doctrine of equitable estoppel applies where defendant's fraudulent conduct results in plaintiff's lack of knowledge of a cause of action.[6] Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014); see also Pearl v. City of Long Beach, 296 F.3d 76, 82 (2d Cir. 2002). "For equitable [estoppel] to apply, plaintiff must show that the defendant wrongfully concealed its actions, such that plaintiff was unable, despite due diligence, to

---

[6] "'Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 462 (S.D.N.Y.2014) (quoting Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotations marks omitted)). It has been said that "New York appears to use the label 'equitable estoppel' to cover both the circumstances 'where the defendant conceals from the plaintiff the fact that he has a cause of action [and] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired.'" Pearl, 296 F.3d at 82 (quoting Joseph M. McLaughlin, Practice Commentaries, N.Y. C.P.L.R. C201:6, at 63 (McKinney 1990)). However, some New York courts distinguish between the two circumstances, and refer only to the latter circumstance as equitable estoppel: "Although both the doctrines of equitable estoppel and equitable tolling have a common origin, they are applied in different circumstances. Equitable estoppel is applicable where the plaintiff knew of the existence of the cause of action, but the defendant's misconduct caused the plaintiff to delay in bringing suit. Equitable tolling, on the other hand, is applicable where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." Kotlyarsky v. New York Post, 195 Misc.2d 150, 153 (Sup. Ct. Kings Cty. 2003) (internal citations omitted); see also Marshall, 51 F.Supp.3d at 463; Statler, D.C. v. Dell, Inc., 775 F. Supp. 2d 474, 482 (E.D.N.Y. 2011). For the sake of clarity, and because Plaintiffs assert that they knew of the existence of the cause of action some time before filing suit, this Court will refer to Plaintiffs' claim as one for equitable estoppel. See Pltf. Opp. Br. (Dkt. No. 55) at 27; Shared Commc'ns Servs. of ESR, Inc. v. Goldman, Sachs & Co., 38 A.D.3d 325, 325 (1st Dep't 2007).

discover facts that would allow him to bring his claim in a timely manner, or that defendant's actions induced plaintiff to refrain from commencing a timely action." De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 318 (S.D.N.Y. 2013) (citing Statistical Phone Philly v. NYNEX Corp., 116 F. Supp. 2d 468, 482 (S.D.N.Y. 2000)); see also Marshall, 51 F. Supp. 3d at 462 (plaintiff must show that "'the defendant wrongfully concealed material facts,' which 'prevented plaintiff's discovery of the nature of the claim,' and that 'plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled'") (quoting Koch v. Christie's Int'l PLC, 699 F.3d 141, 157 (2d Cir. 2012)); Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) ("'Due diligence on the part of the plaintiff in bringing [an] action,' . . . is an essential element of equitable relief.") (quoting Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 794 (3rd Dep't 2005)) (alteration in Abbas).

Here, Plaintiffs claim that Chase "breached its obligations of disclosure and accounting once confronted with Plaintiffs' reasonable requests for information about the performance of the Trust."  (Am. Cmplt. (Dkt. No. 21) ¶ 65)  Plaintiffs allege that they repeatedly requested information from Chase about the performance of the Trust, and that Chase repeatedly provided less than what was requested, and that in certain instances made false statements to Plaintiffs about the Trust's performance. (Id. ¶¶ 65-71)

For example, the Amended Complaint alleges that in a January 16, 2015 email, Plaintiff James Wagley asked Chase to supply "information on the performance of and fees paid by the Trust."  According to Plaintiffs, Chase provided only fee information and, in any event, did not "disclose the $188,245.72 in additional fees that JPMCB improperly charged to the [] Trust."  (Id. ¶ 65)  That summer, James requested a meeting with Chase.  At that meeting, Chase "represented that it had done an excellent job as Trustee of the [] Trust, and failed to

acknowledge the self-dealing that was responsible for the Trust's poor performance."  (Id. ¶ 66)
The following year, James requested another meeting "along with an accounting for any and all
payments (including placement fees) that JPMorgan earned from the use, trading and investment
of funds from the [] Trust."  At that June 9, 2016 meeting, Elaine Agather – chairman of JPMC's
Dallas region – "apologized for the performance of the Trust, which she admitted was
'disturbing.'"  Agather "failed to admit any wrongdoing," however, and "[Chase's]
representatives [] rejected Plaintiffs' request for an accounting."  (Id. ¶ 67 (emphasis in original))
In a September 1, 2016 letter to Chase, Plaintiffs demanded a "full accounting."  (Id. ¶ 68)  On
November 1, 2016, Chase and JMPC responded with "a general publication . . . showing the
expense ratios of investments . . . and copies of account statements from 2005 to present."
Defendants' November 1, 2016 response also states that there are no "self-interested
investments," and thus "no fees to identify."  Chase also represented that it "does not collect a
commission for trades made on behalf of the Trust."  (Id. ¶ 69)

    Finally, at some point after Defendants' November 1, 2016 response, Plaintiffs
sent another letter to Chase repeating their demand for a full accounting by January 17, 2017.
Chase did not respond to this letter.  Instead, on January 13, 2017, Chase submitted a petition in
Surrogate's Court seeking permission to withdraw as Trustee.  (Id. ¶ 70)  "[S]hortly after" Chase
filed its petition**,** Chase sent Plaintiff Mary Frances Wagley a letter notifying her that it had
incorrectly charged fees to the Trust totaling $188,245.72, and would add that amount to her next
distribution check.  (Id. ¶ 71)

    Assuming the truth of these allegations, they are sufficient to support the
application of equitable estoppel to Plaintiff's claims.  Chase's refusal to provide the full
accounting that Plaintiffs demanded, and repeated denials that it had done anything wrong,

amount to wrongful concealment, particularly in light of Chase's role as a fiduciary to Plaintiffs. Because Chase refused to provide the full accounting that Plaintiffs requested, Plaintiffs could not verify their concerns and determine whether they were legally actionable.  Given the fiduciary relationship between Plaintiffs and Chase, they were entitled to rely on Chase's good faith.  See In re Myers, 45 A.D.3d 955, 957 (3d Dep't 2007) (noting that a trustee, "as fiduciary, has a duty to act with the utmost good faith in the administration of a trust").  According to Plaintiffs, it was not until Chase's unsatisfactory responses to their demand letters that Plaintiffs concluded that it would be necessary to "resort[] to litigation."  (Am. Cmplt. (Dkt. No. 21) ¶ 68)  After Chase made clear that it would not provide the information requested, and admitted that it had overcharged the Trust by $188,245.72, Plaintiffs quickly brought suit.

Despite these circumstances, Defendants argue that equitable estoppel is not applicable, because "'plaintiff[s] possesse[d] timely knowledge sufficient to place [them] under a duty to make inquiry and ascertain all the relevant facts. . . ."  (Def. Br. (Dkt. No. 52) at 17 (quoting Murphy, 751 F. App'x at 31-32))  In this regard, Defendants note that Plaintiffs "received and routinely reviewed monthly account statements"; "knew since 2009 of the allegedly 'high-fee' nature of the investments and 'repeatedly' expressed concerns about it"; and "rel[y] on New York Times articles from 2012 and 2013 purportedly making the same claim that JPMorgan's preference for its own funds created a conflict of interest."  (Id. at 18)  But none of these points address Chase's conduct in January 2015, when Plaintiffs began making inquiries about the Trust's performance and Chase's possible conflicts of interest.  Once Plaintiff James Wagley began demanding information about the performance of the Trust, Chase "represented [in summer 2015] that it had done an excellent job as Trustee of the [] Trust, and failed to acknowledge the self-dealing that was responsible for the Trust's poor performance."  Chase

likewise "failed to admit any wrongdoing" at a June 2016 meeting with James Wagley.  (Am. Cmplt. (Dkt. No. 21) ¶¶ 66-67)  The Court concludes that Plaintiffs have adequately pled due diligence from January 16, 2015 on.

Defendants also contend "that tolling under equitable estoppel 'is inapplicable here since the alleged misrepresentation or act of concealment forms the basis of both plaintiff's estoppel argument and [their] underlying substantive cause of action.'"  (Def. Reply Br. (Dkt. No. 53) at 13 (quoting 3636 Greystone Owners, Inc. v. Greystone Bldg. Co., 51 A.D.3d 461, 461 (1st Dep't 2008))

Defendants misconstrue Plaintiffs' allegations about concealment, however.  The alleged misrepresentation and concealment arise from Defendants' failure to provide a full accounting and refusal to disclose that they had engaged in self-interested investments.  While the breach of fiduciary duty claim is based in part on a breach of "duties of full disclosure" (Am. Cmplt. (Dkt. No. 21) ¶ 88), this claim goes beyond a failure to disclose, as it includes allegations of "self-interested transactions" and investments in "unsuitable products and securities."  (Id. ¶ 83)

Defendants cite Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777 (2012), for the proposition that "'in cases where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed, . . . defendants [are] not estopped from pleading a statute of limitations defense. . . .'"  (Def. Reply Br. (Dkt. No. 53) at 13 (quoting Corsello, 18 N.Y.3d at 789))  Corsello does not involve a fiduciary relationship, however, and addresses a different point:  that "there must be a 'later fraudulent misrepresentation . . . for the purpose of concealing the former [breach of fiduciary duty].'"  Corsello, 18 N.Y.3d at 789 (quoting Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 491-92 (2007)).  Here, Plaintiffs have

clearly alleged that in 2015 and 2016, Defendants made fraudulent misrepresentations to conceal their prior self-interested investments.

In sum, the Amended Complaint alleges facts sufficient to justify the application of equitable estoppel as of January 16, 2015.

### 3.      When Plaintiffs' Claims Accrued

Defendants argue that, "[u]nder New York law, a claim for breach of fiduciary duty accrues when the breach occurs.  In cases alleging improper investments by a fiduciary, the claim accrues at the time that the investment is made."  (Def. Br. (Dkt. No. 52) at 14 (citations omitted))

Plaintiffs counter that "a tort claim does not accrue 'until damages are sustained.'"  (Pltf. Opp. Br. (Dkt. No. 55) at 29 (quoting IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 140 (2009)))

Under New York law, a breach of fiduciary duty claim "accrues as soon as 'the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint' . . . . As with other torts in which damage is an essential element, the claim 'is not enforceable until damages are sustained.'"  IDT Corp., 12 N.Y.3d at 140 (quoting Kronos, Inc. v AVX Corp., 81 N.Y.2d 90, 94 (1993)).  Defendants' decades-old authority to the contrary is not persuasive.  See Salzmann v. Prudential Sec. Inc., No. 91 CIV. 4253 (KTD), 1994 WL 191855, at *7 (S.D.N.Y. May 16, 1994) (unpublished opinion); Hughes v. LaSalle Bank, N.A., 419 F. Supp. 2d 605, 612 (S.D.N.Y. 2006), vacated on jurisdictional grounds, No. 06-3778-CV, 2007 WL 4103680 (2d Cir. Nov. 19, 2007); Quinn v. Teti, 234 F.3d 1262 (2d Cir. 2000) (unpublished table opinion).

Although courts "consider whether plaintiff's complaint must, as a matter of law, be read to allege damages suffered so early as to render the claim time-barred," IDT, 12 N.Y.3d at 140, Plaintiffs have pled, for example, a short-term, speculative trade [in 2013] . . . on which [the] Trust realized a loss exceeding 26 percent."  (Am. Cmplt. (Dkt. No. 21) ¶ 44 (emphasis in original))  Given that the Amended Complaint pleads facts sufficient to justify the application of equitable estoppel as of January 16, 2015, this 2013 trade falls within the three-year statute of limitations period.  See IDT, 12 N.Y.3d at 140.

*      *      *      *

For the reasons explained above, a three-year statute of limitations applies to Plaintiffs' breach of fiduciary duty claim, and Plaintiffs have alleged facts sufficient to justify the application of equitable estoppel as of January 16, 2015.  Defendants have not met their burden to demonstrate that Plaintiffs' breach of fiduciary duty claim accrued more than three years before January 16, 2015.  Accordingly, to the extent that Defendants argue that Plaintiffs' fiduciary duty claims are time-barred, their motion to dismiss will be denied.

## B.      Unjust Enrichment Claims

Defendants argue that Plaintiffs' unjust enrichment claims against JPMorgan Investment Management, JPMorgan Securities, and JPMorgan Distribution Services should be dismissed as time-barred and for failure to state a claim.  (Def. Br. (Dkt. No. 52) at 18-20)

### 1.      Whether Plaintiffs State a Claim for Unjust Enrichment

Defendants contend that Plaintiffs seek to recover "alleged third party payments [that] are not recoverable under an unjust enrichment theory."  According to Defendants, "the Amended Complaint does not allege that the Trust paid" "fees for investment advisory and other

21

services that the JPMorgan affiliates performed in connection with the placement of Trust assets in JPMorgan-affiliated mutual funds."  (Def. Br. (Dkt. No. 52) at 20)

"To state a claim for unjust enrichment under New York law, a plaintiff must allege that '(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff.'" Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting Baron v. Pfizer, Inc., 42 A.D.3d 627, 629 (3rd Dept. 2007)) (alteration in Koenig).

Here, Plaintiffs have alleged that (1) JPMorgan Investment Management "receiv[ed] fees as investment adviser, administrator, and provider of administrative services for mutual funds in which JPMCB placed [] Trust assets"; 2) JPMorgan Securities "receiv[ed] fees and commissions for trading and execution and receiv[ed] retrocessions in exchange for the placement of [] Trust assets in investment products"; and 3) JPMorgan Distribution Services "receiv[ed] fees as the shareholder servicing agent and distributor of mutual funds in which Defendants placed [] Trust assets, and . . . receiv[ed] retrocessions in exchange for the placement of [] Trust assets in investment products."  (Am. Cmplt. (Dkt. No. 21) ¶¶ 103-05)  These allegations plainly suffice to plead that JPMorgan Investment Management, JPMorgan Securities, and JPMorgan Distribution Services were enriched.

The Amended Complaint further alleges that these Defendants "extracted a windfall at the expense and detriment of Plaintiffs" (id. ¶ 107), and that Defendants' investment of Trust assets in high-fee vehicles in which Defendants had an interest was improper.  See, e.g., id. ¶¶ 47-52, 54-55.  These allegations suffice to plead that Defendants' enrichment occurred at Plaintiffs' expense.

Defendants argue, however, that Plaintiffs must plead that the Trust – and not Chase – paid the alleged improper fees to JPMorgan Investment Management, JPMorgan Securities, and JPMorgan Distribution Services.  According to Defendants, the Amended Complaint merely alleges that Plaintiffs "paid annual trust management fees to [Chase]," which in turn paid fees to the other Defendants.  (Def. Br. (Dkt. No. 52) at 20 (citing id. ¶ 106))

As an initial matter, Defendants support this argument by improperly asserting that Chase "offset the management . . . fees paid to JPMorgan affiliates for [JPMorgan] funds against the trustee's fee. . . ."  (Id. at 20)  This factual assertion is not drawn from the Amended Complaint, and thus cannot be considered by this Court in resolving Defendants' motion to dismiss.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  "Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).  Here, the Amended Complaint includes only a single sentence from a November 1, 2016 letter sent by Defendants to Plaintiffs (Am. Cmplt. (Dkt. No. 21) ¶ 76); such limited quotation is insufficient to incorporate that letter by reference.

In any event, the cases Defendants cite in support of their argument that Plaintiffs must allege that they paid fees directly to the Chase affiliates are not on point.

In <u>Mueller v. Michael Janssen Gallery Pte. Ltd.</u>, 225 F. Supp. 3d 201 (S.D.N.Y. 2016), plaintiff "allege[d] that his only payment was to [a third party], and he merely speculate[d] that [defendant] received an unspecified 'percentage or portion.'" <u>Id.</u> at 209.  Here, Plaintiffs have pled that JPMorgan Investment Management, JPMorgan Securities, and JPMorgan Distribution Services received some of the fees Plaintiffs paid to Chase.

<u>IDT</u> – the New York case on which <u>Mueller</u> relies – likewise does not support Defendants' argument.  In that case, the court held that "the unjust enrichment claim [cannot] support the disgorgement of any profits [defendant] obtained from [third parties]," where plaintiff had not paid the monies in question.  <u>IDT</u>, 12 N.Y.3d at 142.  Here, of course, Plaintiffs – as beneficiaries of the Trust – paid the fees that Chase transmitted to JPMorgan Investment Management, JPMorgan Securities, and JPMorgan Distribution Services.

Defendants further contend that in <u>Banco Espirito Santo de Inv., S.A. v. Citibank, N.A.</u>, No. 03 CIV. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003), the court held "that fund investors could not state a claim for unjust enrichment against the fund's administrator for fees that were paid by the fund."  (Def. Reply Br. (Dkt. No. 53) at 14 (citing <u>Banco Espirito</u>, 2003 WL 23018888, at *18))  In discussing whether equity required disgorgement of fees, the <u>Banco Espirito</u> court states that "[t]here is no injustice where a party merely exercises its contractual rights.  Additionally, as noted, the fees received by [defendant] came from [a third-party], not from [plaintiff]."  <u>Banco Espirito</u>, 2003 WL 23018888, at *18.  Here, however, Defendants are affiliates of Chase, which is the trustee of the Trust.  Even assuming that the fees were paid pursuant to a contractual arrangement between Chase and its affiliates, this Court cannot presume that the payments at issue were equitable.

The Court concludes that Plaintiffs have adequately pled a claim for unjust enrichment.

## 2.   Whether Plaintiffs' Unjust Enrichment Claim Is Time-Barred

Defendants contend that Plaintiffs' unjust enrichment claim is time-barred, "[b]ecause New York law and the applicable statutes of limitations of the states where Plaintiffs reside provide a limitations period of no more than three years."  (Def. Br. (Dkt. No. 52) at 19)

Plaintiffs – who bring this suit as Trust beneficiaries – reside in Maryland, Texas, California, and Massachusetts.  (Am. Cmplt. (Dkt. No. 21) ¶ 18)  Plaintiffs argue, however, that their "claims accrued in New York" – which has a six-year statute of limitations; that any "statute of limitations was tolled based on Defendants' fraudulent concealment"; and that "Defendants have derived unlawful fee revenue from investments made since 2014 . . . and continue to charge annual fees."  (Pltf. Opp. Br. (Dkt. No. 55) at 31-32 (emphasis in original))

Under New York's borrowing statute,

> [a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. C.P.L.R. § 202 (McKinney).  This borrowing statute "provides that 'when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either:  (1) New York; or (2) the state where the cause of action accrued.' . . . Where the 'injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss.'"  Thea v. Kleinhandler, 807 F.3d 492, 497-98 (2d Cir. 2015) (first quoting Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998), then quoting Glob. Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (1999)).

Plaintiffs contend that New York's borrowing statute does not apply, because "'the trust beneficiaries were not entitled to any guaranteed distributions,' so that any immediate loss was sustained by 'the Trust itself.'"  (Pltf. Opp. Br. (Dkt. No. 55) at 23 (quoting 2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co., 96 F. Supp. 3d 182, 201 (S.D.N.Y. 2015)))  Plaintiffs further contend that "New York courts have repeatedly refused to 'fractionalize' claims based on the residence of geographically dispersed trust beneficiaries." (Id. at 22-23 (citing Maiden v. Biehl, 582 F. Supp. 1209, 1218 (S.D.N.Y. 1984); Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC, 34 N.Y.3d 327, 338 (2019)))

The cases on which Plaintiffs rely are not persuasive here.  As an initial matter, Maiden explicitly notes that "[w]here a cause of action accrues still depends on the facts of each case, but the question is always where the plaintiff felt the economic impact of the fraud." Maiden, 582 F. Supp. at 1212.  Here, the beneficiaries of the Trust – not the Trust or its trustee – are Plaintiffs.  This fact is dispositive of Plaintiffs' argument.

In Maiden, plaintiff was a trustee, which is why the court found it relevant that "the [t]rust itself [] suffered the loss, and the loss was felt in New York."  Id. at 1218.  The Maiden court also made this finding only after noting that "[t]he [t]rust was created in New York, with a New York settlor.  While the Trust originally had a New York trustee and New York beneficiaries, at the time of the purchase [at issue], all four of the beneficiaries lived in Connecticut.  The [t]rust instrument states that the [t]rust is to be construed according to New York law. . . . New York is where taxes are paid, where its investment decisions are made, and where the securities are physically kept."  Id. at 1217-18.  The instant case does not involve comparable facts.  In sum, Maiden merely demonstrates that when a trust or its trustee sues as plaintiff, under certain circumstances the trust's location may be dispositive as to whether New

York's borrowing statute applies.  Because the instant case is not brought by the Trust or its trustee, Maiden is not on point.[7]

For a similar reason, Plaintiffs' reliance on Buchalter Alaska Trust is misplaced. While the court in that case notes that "the trust beneficiaries were not entitled to any guaranteed distributions under the trust," this was only one factor in the court's determination that "the [trust itself []] suffered the loss, and the loss was felt in [Alaska]."  Buchalter Alaska Trust, 96 F. Supp. 3d at 201-02 (internal quotation marks and citation omitted).  The court also considered where "the [t]rust itself was located . . . and organized," and the residence of the trustee.  Id. at 201. The locations of the trust and trustee were relevant in that case, however, because both the trust and its trustees – but not any trust beneficiaries – were plaintiffs.  Id. at 191.  Plaintiffs cite no case suggesting that application of New York's borrowing statute can be avoided where – as here – the beneficiaries of a trust are plaintiffs located outside New York.

As to the statute of limitations in the states where Plaintiffs reside, Plaintiffs – without explanation – address only Massachusetts.  According to Plaintiffs, in Massachusetts, an unjust enrichment claim is subject to a six-year statute of limitations.  (Pltf. Opp. Br. (Dkt. No. 55) at 32 (citing Palandjian v. Pahlavi, 614 F. Supp. 1569, 1577 (D. Mass. 1985)))  Palandjian addresses the statute of limitations for an unjust enrichment claim that "also arises from [] breach of contract allegations," however.  Palandjian, 614 F. Supp. at 1577.  There is no breach of contract claim here.

---

[7]  Deutsche Bank, 34 N.Y.3d 327, is likewise of no assistance to Plaintiffs.  In that case, the court explicitly states that it has not "consider[ed] whether the residence of the certificateholders is an appropriate basis for determining the place of economic injury . . . , or whether the residence of trust beneficiaries may be relevant to the place of economic injury in a different case."  Deutsche Bank, 34 N.Y.3d at 338.  Accordingly, Deutsche Bank does not address the circumstances here.

Having reviewed the statutes of limitations of Maryland, Texas, California, and Massachusetts, this Court concludes that, in all of these states but Texas, unjust enrichment claims are subject to a three-year statute of limitations.  Texas applies a two-year statute of limitations.  See Fed. Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 348 (Cal. 2008) ("[a]n unjust enrichment or quasi-contract action . . . is governed by the three-year statute of limitations for actions based on fraud or mistake"); Ingem, Inc. v. Dial Info. Servs., Inc., 93 Mass. App. Ct. 1112 (Mass. 2018) ("[t]he statute of limitations for unjust enrichment based in a tort claim and for breach of fiduciary duty is three years"); Jason v. Nat'l Loan Recoveries, LLC, 227 Md. App. 516, 529 (2016) ("in Maryland, a claim for unjust enrichment that seeks the remedy of restitution of money is subject to the general three-year statute of limitations"); Elledge v. Friberg-Cooper Water Supply Corp., 240 S.W.3d 869, 869 (Tex. 2007) ("[t]his case reaffirms that unjust enrichment claims are governed by the two-year statute of limitations").

However, Defendants have only argued that "the applicable statutes of limitations of the states where Plaintiffs reside provide a limitations period of no more than three years." Defendants do not address the effect of Texas's two-year statute of limitations.  (Def. Br. (Dkt. 52) at 19)

Moreover, equitable estoppel will apply to Plaintiffs' unjust enrichment claims, for the same reasons stated above with respect to Plaintiffs' breach of fiduciary duty claims.  See Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 539-40 (S.D.N.Y. 2017) (applying equitable estoppel to both unjust enrichment and breach of contract claims where the defendant "provid[ed] a misleading explanation of the practice on which [the plaintiff] reasonably relied").

Given the current record, Defendants' motion to dismiss Plaintiffs' unjust enrichment claims will be granted only as to payments received by Defendants before January 17, 2012, and will otherwise be denied.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part as set forth above. The Clerk of Court is directed to terminate the motion (Dkt. No. 51).

The initial pretrial conference in this matter will take place telephonically on **October 22, 2020 at 11:00 a.m.** The parties are directed to dial 888-363-4749 to participate, and to enter the access code 6212642. The press and public may obtain access to the telephone conference by dialing the same number and using the same access code. The Court is conducting multiple telephone conferences on this date. The parties should call in at the scheduled time and wait on the line for their case to be called. At that time, the Court will un-mute the parties' lines. Seven days before the conference, the parties must email Michael_Ruocco@nysd.uscourts.gov and GardepheNYSDChambers@nysd.uscourts.gov with the phone numbers that the parties will be using to dial into the conference, so that the Court knows which numbers to un-mute. The email should include the case name and case number in the subject line.

Seven days before the conference, the parties will submit a joint letter addressing the following in separate paragraphs: (1) a brief description of the case, including the factual and legal bases for the claims and defenses; (2) any contemplated motions; and (3) the prospect for settlement. For the Court's convenience, the parties must set forth the conference's date and time in the joint letter's opening paragraph. In preparing their joint letter and proposed case

management plan, the parties are to consult the Court's Individual Practices and model Case

Management Plan and Scheduling Order – both of which are available on this District's website.

Dated:  New York, New York
        September 26, 2020

SO ORDERED.

_____

Paul G. Gardephe
United States District Judge